UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DELON FLEMING,

              Plaintiff

v.

WAYNE COUNTY JAIL, et al.,

              Defendants.

_____/

Case No. 2:19-cv-12297
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART CORRECT CARE SOLUTIONS DEFENDANTS' MOTION TO DISMISS (ECF No. 41)

**I.**    **RECOMMENDATION:** The Court should **GRANT IN PART** and **DENY IN PART** Defendants Correct Care Solutions, Dominque Montgomery, Jamie Sharpe, Amy Gray, Alice Norris, Paige Proper, and Erika Johnson's motion to dismiss (ECF No. 41).

**II.**    **REPORT:**

### A.    Background

On July 2, 2019, Chief Judge Hood dismissed Michael Delon Fleming (#358778) from a prior lawsuit, because he had not signed the complaint. *See* Case No. 2:19-cv-11217-DPH-EAS (E.D. Mich.). In August 2019, Fleming, who is currently incarcerated at the Michigan Department of Corrections (MDOC) Bellamy Creek Correctional Facility (IBC), filed the instant lawsuit stemming from

his August 30, 2018 arrival at Wayne County Jail (WCJ).  (ECF No. 1, PageID.13.)  Fleming names twenty-two defendants – seemingly comprised of fourteen Wayne County Defendants and eight Correct Care Solutions Defendants. (ECF No. 1; *see also* ECF No. 31, PageID.200 [Demand for Jury Trial].)

Plaintiff is proceeding *in forma pauperis* (ECF No. 12), so the United States Marshals Service (USMS) is assisting with service of process upon Defendants. *See* E.D. Mich. LR 4.1(b).  As set forth in the Court's recent order, several Defendants have appeared, but service is ongoing as to several others, including apparent CCS Defendant "Deniess," who Plaintiff describes as a "head psychologist."  (ECF No. 58; ECF No. 1, PageID.15 ¶ 16.)

## B.    Motion to dismiss by seven CCS Defendants

Germane to this report are the seven CCS Defendants who have appeared, namely:  (1) CCS; (2) Amy Gray, R.N.; (3) Dominique Montgomery; (4) Alice Norris; (5) Jamie Sharpe; (6) Paige Proper; and, (7) Erika Johnson.  (ECF Nos. 32, 36, 38, 39.)  On May 3, 2021, these CCS Defendants filed a motion to dismiss pursuant to Fed. Rules Civ. P. 8(a)(2) and 12(b)(6).  They expressly argue that "[t]he allegations made against Defendants do not rise to the level of an Eighth Amendment and Fourteenth Amendment violation."  (ECF No. 41, PageID.239-242.)

## C.    Standard

Plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation of* Binder, M.J.).[1]

## D.    Discussion

### 1.    General allegations

Plaintiff claims to have arrived at WCJ on August 30, 2018.  (ECF No. 1, PageID.13.)  The events giving rise to Plaintiff's claims occurred between his September 4, 2018 transfer to WCJ's 4th Floor mental health ward and his April 2019 sentencing.  (ECF No. 1, PageID.13, 16.)  As alleged in his complaint:

- Plaintiff "spoke with a nurse and W.C.J. deputies concerning [his] breathing on needing a 'CPAP Breathing Machine.'"

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

- On September 4, 2018, Plaintiff was transferred from WCJ's 3rd Floor to the 4th Floor "for mental health on cont[i]ngency to receive a CPAP machine breathing treatment."

- Plaintiff claims he was "subjected and exposed to many complications that w[ere] cruel and unus[u]al to [him] and many others."

(ECF No. 1, PageID.13, 16.) (*See also id*., PageID.14-15 ¶¶ 13-20; ECF No. 43, PageID.253-254.) On April 3, 2019, Plaintiff was sentenced in Case No. 18-009678-01-FC (Wayne County), although the sentence was amended the following day.

In any event, it seems that Plaintiff was transferred to the MDOC's custody shortly thereafter, perhaps as soon as April 5, 2019.[2] (*Id*.) Two months later, on June 5, 2019, at which point he seems to have been incarcerated at IBC, Plaintiff was admitted to McLaren Hospital in Lansing for treatment of internal bleeding, vomiting blood, blood in stool, passing out, and hemoglobin at 6.9 – presumably 6.9 grams per deciliter. (ECF No. 1, PageID.13, 17.) Plaintiff suggests that these ailments could have been avoided if Defendants would not have "deliberately ignored [Plaintiff's] complaints and treated [him] whole there." (*Id*., PageID.17.) On June 9, 2019, Plaintiff was released from the hospital. (*Id*., PageID.13, 17.)

---

[2] *See* www.michigan.gov/corrections, "Offender Search," (image date).

### 2.     First Amendment retaliation

Plaintiff intends a First Amendment claim, which the CCS Defendants

acknowledge.  (ECF No. 1, PageID.11, 18; ECF No. 41, PageID.225 ¶ 2, 234,

235.)  However, the CCS Defendants simply state, "Plaintiff provides no factual

basis and makes no allegations against any CCS Defendant for violations under the

First Amendment and for negligence."  (ECF No. 41, PageID.242.)  This is not

entirely accurate.  Albeit contained within the complaint's bases for jurisdiction,

Plaintiff's pleading does allege that Defendant Gray "told [Defendant Johnson] and

[Plaintiff] that, "[there] wasn't [any]thing wrong" deliberately to show bias

towards [Plaintiff] [be]cause [he] said [he] would p[u]rsue a grievance on her for

not furthering her treatment on [his] health."  (ECF No. 1, PageID.14 ¶ 14.)    "A

retaliation claim essentially entails three elements: (1) the plaintiff engaged in

protected conduct; (2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) there is a causal connection between elements one and two—that is, the adverse

action was motivated at least in part by the plaintiff's protected conduct."

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff admits that the allegations contained within his "statement of

claim" are "sparse[,]" (*see* ECF No. 43, PageID.256 (citing ECF No. 1,

PageID.13)), as indeed they are, although he attaches his May 24, 2021 affidavit

(*id*, PageID.268-271) in support of a First Amendment retaliation claim that is based on "making complaints of his medical issues and filing grievance(s)" and being "sent to the mental health ward."  (ECF No. 43, PageID.255-257.)  In their reply, the CCS Defendants contend that the allegations in Plaintiff's May 24, 2021 affidavit are "not pled in his Complaint."  (ECF No. 44, PageID.279.)  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[3]  Indeed, they are not pleaded in the complaint.

Even assuming that Plaintiff has successfully pleaded his engagement in protected conduct by threatening to file grievances, he has failed to allege the second and third elements of a First Amendment retaliation claim under *Thaddeus-X*.  While he does allege that Defendant Gray "deliberately" stated, "[i]t wasn't nothing wrong" to "show bias" towards him because of his threatened grievance, this appears as an abstract, threatened or hypothetical statement.  (ECF No.1, PageID.14, ¶ 14.)  Plaintiff does not allege that an actual adverse action was taken against him or clarify exactly what that adverse action was, notwithstanding his

---

[3] For example, the January 6, 2021 affidavit of Aonral C. Jerry, which Plaintiff attaches to his motion response and which Plaintiff cites in support thereof (ECF No. 43, PageID.273-274), is a matter outside of the pleading and will not be considered here.

allegation in the prior paragraph – seemingly related to his deliberate indifference claim – that Gray never requested further treatment to find out why there was blood in his stool.  (*Id*., ¶ 13.)  Nor does he allege a causal connection between the protected conduct and an adverse action generally or a connection between Gray's medical follow-up and retaliation specifically.  In other words, he does not plausibly allege that the "bias" against him, based on his threatened grievances, ever manifested in a concrete, adverse action.  And he does not plead a retaliatory connection between a failure to treat his medical condition and what appears to be a threat to file a grievance sometime *after* the failure to treat.  The Court is not tasked with going beyond his pleadings and making a causal connection for him. Accordingly, Plaintiffs' claims for First Amendment retaliation should be dismissed for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### 3.    Fourteenth Amendment deliberate indifference

Plaintiff intends a deliberate indifference claim.  (ECF No. 1, PageID.14-15 ¶¶ 13-20; ECF No. 43, PageID.253-254.)  Within Plaintiff's "statement of claim," he mentions his breathing, a CPAP machine, exposure to certain conditions (black mold, head lice, fecal matter, roaches, contaminated water), and blood in his stool. (ECF No. 1, PageID.13.)  He claims he was later admitted to the hospital for internal bleeding, vomiting blood, blood in his stool, passing out (unconscious),

and a hemoglobin reading of 6.9 (presumably grams per deciliter).  (*Id.*; *see also*

*id.*, PageID.17.)[4]

Preliminarily, although Plaintiff cites both the Eighth and the Fourteenth

Amendments, Defendants correctly note that, because Plaintiff was a pretrial

detainee at the time of the events in question, his claims are properly assessed only

under the Fourteenth Amendment's Due Process Clause, not under the Eighth

Amendment's Cruel and Unusual Punishment clause.  (ECF No. 41, PageID.239.)

The Sixth Circuit "has consistently applied the same 'deliberate indifference'

framework to Eighth-Amendment claims brought by prisoners as Fourteenth-

Amendment claims brought by pretrial detainees."  *Griffith v. Franklin Cty.,*

*Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020).  As the Court of Appeals has stated:

> Under the Fourteenth Amendment, pretrial detainees have a "right to
> adequate medical care." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th
> Cir. 2005).  A prison official violates that right when he acts with
> "deliberate indifference" to an inmate's "serious medical
> needs." *Estelle v. Gamble*, 429 U.S. 97, 104 . . . (1976).  The
> deliberate indifference standard contains both an objective and
> subjective component. *Phillips v. Roane County*, 534 F.3d 531, 539

---

[4] Plaintiff's motion response explains that his deliberate indifference claim is based
upon four areas:  (1) exposure to deplorable or inhumane living conditions; (2)
refusal to treat him for Sleep Apnea (CPAP breathing machine); and, (3) failure to
provide treatment for "repeated bouts of vomiting" and "blood in his stool," which
lead to his "hospitalization for internal bleeding."  (ECF No. 43, PageID.257.)
When making these explanations, although he references his "statement of claim"
(ECF No. 1, PageID.13), he also relies upon his May 24, 2021 affidavit (ECF No.
43, PageID.268-271).  (*See* ECF No. 43, PageID.257-262.)  Yet, whatever
enhancement Plaintiff offers in his response or in his attached affidavit, it is
outside of the pleading.  Fed. R. Civ. P. 12(d).

(6th Cir. 2008).  First, under the objective component, an inmate must show a "sufficiently serious" medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 . . . (1994).  Second, under the subjective component, an inmate must show both that an official knew of her serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need.  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

*Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020).

### a.    Minimum civilized necessities of life

Plaintiff complains of certain conditions of confinement on the 4th Floor, such as "black mold, head lice, fecal matter, roaches, contaminated water, minimum civilized necessities of life . . . ."  (ECF No. 1, PageID.13.)  However, the CCS Defendants correctly note that:  (i) "Plaintiff's apparent need for a CPAP machine is completely unsupported by Plaintiff's claims related to conditions of confinement . . . [;]" (ii) Plaintiff "fail[s] to allege any knowledge by CCS Defendants[;]" and, (iii) Plaintiff does not identify "communication by Plaintiff to any CCS Defendant . . . [.]"  (ECF No. 41, Page ID.240; *see also* ECF No. 44, PageID.282.)  The CCS Defendants also note that "[t]here is not context for how these alleged conditions [*i.e.*, black mold, head lice, fecal matter, roaches, contaminated water, *etc*.] affected him personally and for what type of duration."  (ECF No. 44, PageID.281.)  In fact, it seems this claim may be intended for the Wayne County Defendants.  Accordingly, Plaintiff has failed to state a claim against any of the CCS Defendants as to these conditions of confinement.

**b.      Defendants Johnson, Gray, and Norris**

Plaintiff identifies Johnson, Gray and Norris as WCJ 4th Floor nurses.  (ECF No. 1, PageID.2, 8, 14-15 ¶¶ 13-15.)  Plaintiff complains that Norris "tore up" Plaintiff's kite about the CPAP machine and blood in his stool and stated, "there's nothing wrong with you."  (ECF No. 1, PageID.13, 15 ¶ 15.)  The CCS Defendants contend that this claim lacks context but also acknowledge Plaintiff's allegation that Norris "ripped up Plaintiff's kite . . . ."  (ECF No. 41, PageID.240-241; *see also* ECF No. 43, PageID.282.)  Thus, this allegation should not be dismissed as lacking specificity, although it would be helpful to the CCS Defendants and this Court if Plaintiff confirmed the constitutional basis of his claim against Defendant Norris, perhaps including any detail offered in his motion response.  (*See* ECF No. 43, PageID.253, 269, 273.)  Therefore, the Court should permit Plaintiff to clarify the scope of his Fourteenth Amendment deliberate indifference claim against Defendant Norris.  Fed. Rules Civ. P. 8(a)(2), 12(e), 15(a).  If Plaintiff is alleging deliberate indifference to a serious medical need, he should be mindful of the need to allege objective and subjective components of such a claim, as set forth above. *Downard for Est. of Downard*, 968 F.3d at 600.

As to Johnson and Gray, Plaintiff complains that he gave Defendant Erika Johnson (RN #13) a blood sample from his stool to be tested, which she gave to Defendant Amy Gray (RN #14) to be tested.  Allegedly, Defendant Gray

deliberately told Defendant Johnson and Plaintiff that, "[n]othing was wrong with [him] . . . [;]" therefore, Johnson "didn't further investigate the matter," and Gray "didn't further investigate the matter or health complaints." (ECF No. 1, PageID.13.) Moreover, Plaintiff: (i) reiterates that Johnson "never requested further treatment [as] to why [there] was blood in [his] stool[;]" and, (ii) suggests that Gray did not "further[] . . . treatment on [his] health." (ECF No. 1, PageID.13-14.) The CCS Defendants argue that these allegations do not state a Fourteenth Amendment claim against either Johnson or Gray (ECF No. 41, PageID.240), in response to which Plaintiff claims there was a "fail[ure] to provide treatment for repeated bouts of vomiting, and, blood in his stool," which "lead[] to Plaintiff's hospitalization for internal bleeding." (ECF No. 43, PageID.257, 260-262.) As noted elsewhere in this report, whatever enhancement Plaintiff offers in his response or in his attached affidavit, it is outside of the pleading. Fed. R. Civ. P. 12(d). In fact, it is not clear from Plaintiff's complaint if the stool sample was in fact tested or discarded or lost, *etc.* Clarity on this point would illuminate the type of claim Plaintiff intends to bring against each of these Defendants. Indeed, in their reply, the CCS Defendants contend that, to the extent Plaintiff alleges Defendants Johnson and Gray "didn't further investigate the matter," (ECF No. 1, PageID.13), it is akin to "a disagreement in medical judgment . . . ." (ECF No. 44, PageID.280). "Where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Thus, the Court should permit Plaintiff to clarify the scope of his Fourteenth Amendment deliberate indifference claims against Defendants Johnson and Gray. Fed. Rules Civ. P. 8(a)(2), 12(e), 15(a).  Here, too – if Plaintiff is alleging deliberate indifference to a serious medical need, he should be mindful of the need to allege the objective and subjective components of such a claim, as set forth above. *Downard for Est. of Downard*, 968 F.3d at 600.

### c.    Proper, Sharpe, and Montgomery

Plaintiff identifies Proper, Sharpe, and Montgomery as WCJ 4th Floor psychologists and/or social workers.  (ECF No. 1, PageID.2, 9-10, 15 ¶¶ 17-19.) Although the psychologists and/or social workers are not expressly mentioned in Plaintiff's "statement of claims," (*id*., PageID.13), Plaintiff specifically refers to Proper, Sharpe and Montgomery elsewhere in his complaint while representing that he wrote kites concerning various matters – such as his health, living conditions, WCJ staff, CCS R.N.s, his well-being, and/or his state of mind – but he "never got a reply . . . [,]" (*id*., PageID.15 ¶¶ 17-19).  (*See also* ECF No. 43, PageID.254.)

However, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "Further, a claim of failure to supervise or properly train under section 1983 cannot be based on simple negligence." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (citing *Hays*, 668 F.2d at 872). Put another way, "[t]he individual liability of officials under section 1983 must be based on their own unconstitutional behavior–not merely the right to control the actions of employees or the failure to act." *Davis v. Fentress Cty. Tennessee*, 6 F. App'x 243, 250 (6th Cir. 2001) (citing *Leach,* 891 F.2d at 1246). Moreover, even if Plaintiff's claims against these individuals are not based upon a theory of supervisory liability, the allegations lack specificity and seem limited to claims of inaction by failing to respond to Plaintiff's kites. (*See* ECF No. 1, PageID.15 ¶¶ 17-19.) *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (where "their only roles in this action involve the denial of administrative grievances or the failure to act[,]" they "cannot be liable under § 1983.") Thus, as set forth in the complaint, Plaintiff's allegations against Proper, Sharpe, and Montgomery do not state a claim upon which relief may be granted.

### d.    CCS

Plaintiff identifies CCS as WCJ's "health provider." (ECF No. 1, PageID.2 ¶ 20, PageID.10 ¶ 20, PageID.15 ¶ 20.) The CCS Defendants claim Plaintiff has

"fail[ed] to allege that CCS had any unconstitutional policy, practice or custom that affected his health care."  (ECF No. 41, PageID.241-242.)

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  *See also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (a plaintiff who sues a municipality "for constitutional violations under 42 U.S.C. § 1983 must establish that a governmental policy or custom caused the alleged injury.") (citing *Monell*, 436 U.S. at 690-691); *St. v. Corr. Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996) ("There was no evidence presented that indicated that Stephen's deliberate indifference to the risk of harm to Street (*i.e.*, his failure to take action in light of Harris' questions) was undertaken pursuant to any policy or custom of CCA or because of the inadequacy of Stephen's training.").  "[A] municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation."  *Sova*, 142 F.3d at 904 (quoting *Monell,* 436 U.S. at 694).  Further, although *Monell* addresses "municipal" liability specifically, it is well-established that § 1983 liability under *Monell* can also attach to "a private entity

that contracts to perform traditional state functions . . . ."  *Johnson*, 398 F.3d at

877.  The parties do not dispute that *Monell* applies to CCS in this case.  (*See* ECF

No. 41, PageID.241-242; ECF No. 43, PageID.263-264; ECF No. 44, PageID.282.)

In his complaint, Plaintiff alleges that he submitted:  (i) a grievance on the

Norris matter to CCS "several times an[d] never got a reply[;]" and, (ii)

"grievances to [CCS] about the issues concerning their staff and [his] health

issues[,]" and "it went unresolved."  (ECF No. 1, PageID.13.)  Put another way,

Plaintiff contends that he has "kited & grieved the staff of [CCS] on neglect

towards [his] health[,]" but "they deliberately disregarded my kites and grievances

on all the matters by not addressing the issues or staff."  (ECF No. 1, PageID.15 ¶

20.)  Similarly, in his response, Plaintiff contends he "made a concerted effort to

bring to [CCS's] attention . . . the failure of its employees to provide adequate

medical care[,]" such as "placing him in the mental health ward under the guise of

treatment, contingent on him receiving his CPAP breathing machine[,]" but

Plaintiff "never received a response to any of his grievances."  (ECF No. 43,

PageID.254.)  These do not describe a policy, practice or custom.

Plaintiff seemingly attempts to cure this omission in his response.  He

explains that his claim against Defendant CCS is based upon his transfer to WCJ's

mental health ward, which subjected him to "a routine pattern or practice involving

'increased scrutiny' of health-care complaints." (ECF No. 43, PageID.257, 262-265.) He elaborates on the alleged unwritten policies and practices as follows:

1.  withholding medical devices from inmates due to costs;

2.  withholding medical devices from inmates in contravention to their medical needs;

3.  providing inadequate medical care; and,

4.  subjecting mental health ward inmate(s) healthcare concerns to "increased scrutiny" due to their status of being mentally ill.

(*Id.*, PageID.262.)[5]

Then, Plaintiff makes a point about toleration and acquiescence. Under *Monell*, a municipality "cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the [WCJ] leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996). Noting that "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice[,]" *Memphis, Tennessee Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004), Plaintiff contends that CCS's failure to address his complaints – *i.e.*, his "several grievances

---

[5] This report construes Plaintiff's response's allegation that CCS and Wayne County "conspired together under an unwritten policy or custom[,]" as undeveloped. (*Id.*, PageID.263.)

concerning the lack of treatment and the failure of the mental health ward staff to

meet with him[,]" – "must mean that they *acquiesced* to the custom or practice of

their employees conduct."  (*Id*., PageID.264 (emphasis added).)  Plaintiff also

alludes to "other" cases involving CCS from which "[a] clear pattern emerges . . .

[,]" namely accusations of "providing inadequate medical care to inmates at other

facilities where it provides services[.]"  (ECF No. 43, PageID.264-265.)  *See*, *e.g.*,

*Sanchez v. New York Correct Care Sols. Med. Servs., P.C.*, No. 16-CV-6826 CJS,

2018 WL 6510759, at *1 (W.D.N.Y. Dec. 11, 2018) (granting in part and denying

in part Defendants' motion to dismiss and Plaintiff's pretrial detainee decedent's

cross-motion to amend).  Therefore, Plaintiff contends he has "clearly

demonstrated" the following:

> (1) "a clear and persistent" pattern of unconstitutional conduct by
> [CCS] employees; (2) [CCS]'s "notice or constructive notice" of the
> unconstitutional conduct; (3) [CCS]'s "tacit approval of the
> unconstitutional conduct, such that [its] deliberate indifference in [its]
> failure to act can be said to amount to an official policy of inaction";
> and (4) that the policy of inaction was the "moving force" of the
> constitutional deprivation....

*Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018) (citing *D'Ambrosio v.*

*Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (quoting *Doe v. Claiborne County*,

103 F.3d 495, 508 (6th Cir. 1996))).  (*Id*., PageID.265.)

Notwithstanding Plaintiff's *response*'s assertions that he was "intentionally

denied medical care as a result of [CCS's] actions/inaction[,]" Plaintiff's *complaint*

does not allege "an unwritten policy, procedure, or custom of denying inmates, housed in the [WCJ's] mental health ward, adequate medical care." (ECF No. 43, PageID.257, 265.) Plaintiff's complaint fails to account for – as the CCS Defendants put it – "allegations regarding a CCS policy, practice, [or] custom that was proximately linked to [Plaintiff's] alleged injuries[,]" or "facts regarding a CCS policy, practice, or custom[.]" (ECF No. 44, PageID.282.) Accordingly, Plaintiff's claims against Defendant CCS should be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

### E. Conclusion

The CCS Defendants seek dismissal of the claims against them "with prejudice[.]" (ECF No. 41, PageID.225, 242; ECF No. 44, PageID.283.) However, for the reasons stated above, the Court should: **(1)** conclude Plaintiff's apparent First Amendment retaliation claim fails "to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6); **(2)** permit Plaintiff an opportunity to clarify the scope of his Fourteenth Amendment deliberate indifference claims against Defendants Norris, Johnson, and Gray (*e.g.*, to confirm the constitutional bases of his claims against them, to include any detail offered in his motion response (ECF No. 43), and to provide further specificity, such as dates to the extent possible, whether the stool sample was in fact tested or discarded or lost, *etc*.), while being mindful of the need to allege the objective and subjective

components of such a claim; but, **(3)** conclude that Plaintiff has not stated a Fourteenth Amendment deliberate indifference claim against Defendants Proper, Sharpe, Montgomery or CCS upon which relief can be granted.  Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** Defendants Correct Care Solutions, Dominque Montgomery, Jamie Sharpe, Amy Gray, Alice Norris, Paige Proper, and Erika Johnson's motion to dismiss (ECF No. 41).  If the Court agrees with these recommendations, then the only claims to survive *against the seven CCS Defendants who have appeared* (*i.e.*, not Defendant Deniess, who has yet to appear) are Fourteenth Amendment deliberate indifference claims against Defendants Norris, Johnson, and Gray, although these still warrant an opportunity for clarification (*see* Sections D.3.b & D.3.c).

## III.  PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 28, 2021         s/*Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE