UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DELON FLEMING,

             Plaintiff,

v.

WAYNE COUNTY JAIL, *et al*.,

             Defendants.

_____/

Case No. 2:19-cv-12297
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT THE WAYNE COUNTY DEFENDANTS' MOTION TO DISMISS (ECF No. 121)

**I.     RECOMMENDATION**:  The Court should **GRANT** the Wayne County Defendants' motion to dismiss (ECF No. 121).

**II.    REPORT**

**A.     Prior Pleadings**

Michael Delon Fleming is currently incarcerated at the Michigan Department of Corrections (MDOC) Kinross Correctional Facility (KCF), where he is serving a sentence imposed on April 3, 2019.  *See* Case No. 18-9678-01-FC (Wayne County).  (*See* www.michigan.gov/corrections, "Offender Search," last visited Nov. 29, 2022.)  On August 5, 2019, Fleming filed the instant lawsuit against multiple defendants, seemingly comprised of various Wayne County and Correct Care, Inc. Defendants.  (ECF No. 1; *see also* ECF No. 31, PageID.200

[Demand for Jury Trial].)  Various Defendants challenged the original complaint

by way of motions to dismiss (*see* ECF No. 41, 71, 77), which have since been

addressed by the Court (*see* ECF Nos. 66, 70, 84).

Plaintiff filed an amended complaint on February 15, 2022.  (ECF No. 82.)

However, on March 11, 2022, it was stricken from the record, and the Court

permitted Plaintiff to file a new amended complaint on or before April 10, 2022.

(ECF No. 84.)

### B.    The Operative Pleading

In his amended complaint, hand-dated April 8, 2022, but post-marked and

filed effective April 11, 2022, Plaintiff names approximately twenty-one

Defendants, each sued in official and individual capacities.  (ECF No. 91,

PageID.673-675 ¶¶ 4-13.)[1]  Although Plaintiff lists Benny Napoleon as a

Defendant, Napoleon passed away in December 2020; therefore, should any

official capacity claims against the Wayne County Sheriff survive this motion, the

---

[1] In the original complaint, Plaintiff listed Wayne County Jail, the Wayne County
Sheriff's Department, and Benny Napoleon (former Wayne County Sheriff)
together.  (ECF No. 1, PageID.1, 3.)  By comparison, in the April 11, 2022
amended complaint, Plaintiff lists Napoleon and Wayne County separately (ECF
No. 91, PageID.673 ¶¶ 6, 7).  And, among the amended complaint's named
Defendants are "John Doe deputies" and "John Doe [nurses]."  (*See id.*,
PageID.673-674 ¶¶ 4, 8.)

Court will substitute Raphael Washington in Napoleon's place, pursuant to Fed. R. Civ. P. 25(d).

The factual allegations underlying Plaintiff's complaint span the period from August 30, 2018 (the date of his arrest and intake) – seemingly through his April 3, 2019 sentencing – to June 2019 (when he was rushed to McLaren Greater Lansing Hospital). (ECF No. 91, PageID.675-693 ¶¶ 14-70.)

### 1. Correct Care Solutions Defendants

Seven contract Defendants – Correct Care Solutions (CCS), Amy Gray, R.N., Dominique Montgomery, Alice Norris, Jamie Sharpe, Paige Proper, and Erika Johnson ("the CCS Defendants") – have appeared. (ECF Nos. 32, 36, 38, 39.)

Gray, Jhonson, and Norris's motion to dismiss (ECF No. 144), which challenges the operative pleading (ECF No. 91), and as to which a response has been filed (ECF Nos. 146, 148), will be addressed under separate cover.

### 2. Wayne County Defendants

Ten Wayne County Defendants – Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis, Napoleon, Murbach, & Wayne County ("the Wayne County Defendants") – have appeared. (ECF Nos. 49, 63, 102, 110.) The Wayne County Defendants have filed answers to the amended complaint. (ECF Nos. 94, 103.) Defendant Jean has yet to appear. As set forth in the Court's prior order, Wayne

3

County was required to inform the Court as to whether it would be entering an appearance on behalf of Defendant Jean.  (ECF No. 113, PageID.872-873.)  On September 29, 2022, Wayne County Corporation Counsel explained that it would not be representing Jean in this matter.  (ECF No. 115.)  On December 22, 2022, the Court entered an order directing Wayne County Corporation Counsel to provide Jean's last known address to the U.S. Marshals Service (USMS) for use in effecting service of process.  (ECF No. 129.)  The Clerk of the Court issued a summons on January 11, 2023, and, on January 23, 2023, the USMS acknowledged receipt of service documents.  (ECF Nos. 130, 132.)  This attempt at service of process is ongoing.

On April 24, 2023, following my report and recommendation (ECF No. 141), Judge Goldsmith dismissed without prejudice Defendants Sabiation, Biaz (or Diaz), and Deniess.  (ECF No. 147.)  Therefore, only ten Wayne County Defendants are currently before this Court.

### C.    Wayne County Defendants' Motion to Dismiss

Judge Goldsmith has referred this case to me for pretrial matters.  (ECF No. 96.)  Currently before the Court is a motion to dismiss filed by the Wayne County Defendants, excepting, of course, non-appearing Defendant Jean.  (ECF No. 121.)  They argue that:  (1) Plaintiff's complaint does not present a coherent cause of action or claim showing entitlement to relief as required by Fed. R. Civ. P. 8(a)(2)

4

and, therefore, it should be dismissed pursuant to Fed. R. Civ. P. 12(c); and, (2)
Plaintiff cannot establish a *Monell* claim against Wayne County.  (*Id.*, PageID.943,
952-959.)

Plaintiff's response was due on February 17, 2023.  (ECF No. 133.)
Plaintiff's response was filed with the Court on February 22, 2023, although the
certificate of service is dated February 17, 2023, and it appears to have been post-
marked the same day.  (ECF No. 134, PageID.1093).  Attached to Plaintiff's
response are:  (1) Fleming's undated and unsworn "affidavit," which the Court will
treat as a declaration signed under penalty of perjury, 28 U.S.C. § 1746, since
Plaintiff cites the statute and "swear[s] under the penalty of law . . . [,]" (ECF No.
134, PageID.1085-1088); and, (2) Aonral C. Jerry's January 6, 2021 notarized
affidavit (*id.*, PageID.1090-1091).

Defendants twice sought an extension of time within which to file a reply
(ECF Nos. 137, 139), but the first was denied "for failure to demonstrate, let alone
discuss, excusable neglect, as required by Fed. R. Civ. P. 6(b)(1)(B)[,]" (ECF No.
138), and the second by way of a relatively lengthy order (ECF No. 140).  This
motion is now ready for decision.[2]

---

[2] On April 5, 2023, the same ten Wayne County Defendants filed a motion for
summary judgment (ECF No. 145), as to which Plaintiff has filed a response (ECF
Nos. 146, 149).  If the Court agrees with my recommendation as to these
Defendants' motion to dismiss (ECF No. 121), then the Court will not need to
address their latter-filed motion for summary judgment (ECF No. 145).

**D.     Discussion**

**1.     Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis, Napoleon, & Murbach (the nine individual Wayne County Defendants)**

As to the nine individual Wayne County Defendants, Defendants argue that Plaintiff's amended complaint does not provide the required "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). (ECF No. 121, PageID.950.)[3] The Supreme Court has explained that the Rule 8 pleading standard . . .

> . . . does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) omitted).

Contending that the amended complaint does not comply with Rule 8(a)(2), Defendants further contend the amended complaint "should be dismissed pursuant

---

[3] To the extent Defendants argue that the amended complaint lacks a "demand for the relief sought, which may include relief in the alternative or different types of relief[,]" Fed. R. Civ. P. 8(a)(3), it is undeveloped (ECF No. 121, PageID.950), and, in any event, the amended complaint seeks compensatory and punitive damages (ECF No. 91, PageID.672 [Introduction], 697-698 [Relief Requested]).

to Fed. R. Civ. P. 12(c)." (*Id.*, PageID.950.) In other words, Defendants seek

judgment on the pleadings. As the Sixth Circuit has explained:

> Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the
> pleadings are closed—but early enough not to delay trial—a party
> may move for judgment on the pleadings." We assess a Rule 12(c)
> motion "using the same standard that applies to a review of a motion
> to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997
> F.3d 653, 659 (6th Cir. 2021) (quoting *Moore v. Hiram Twp.*, 988
> F.3d 353, 357 (6th Cir. 2021)). Thus, "[t]o survive a Rule 12(c)
> motion, the complaint must contain sufficient factual matter, accepted
> as true, to state a claim to relief that is plausible on its face." *Engler*,
> 862 F.3d at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 . . .
> (2009)) (internal quotation marks omitted). "When ruling on a
> defendant's motion to dismiss on the pleadings, a district court 'must
> construe the complaint in the light most favorable to the plaintiff,
> accept all of the complaint's factual allegations as true, and determine
> whether the plaintiff undoubtedly can prove no set of facts in support
> of his claim that would entitle him to relief.'" *Id.* at 574–75 (citing
> *Kottmyer*, 436 F.3d at 689). "But we 'need not accept as true legal
> conclusions or unwarranted factual inferences.'" *Moderwell*, 997
> F.3d at 659 (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463,
> 466 (6th Cir. 2017)).

*Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 386-387 (6th Cir.

2022).

Here, the Court need only address Plaintiff's "claims for relief" based upon

the Eighth Amendment (failure to intervene in his medical treatment & unsanitary

environment) and the First Amendment (denial of right to petition the Government

for a redress of grievances, retaliation). (*Id.*, ¶¶ 72-73, 75; *see also id.*, PageID.672 [Introduction], 698 [Relief Requested].)[4]

### a. Introductory allegations

The facts underlying this matter stem from Plaintiff's alleged August 30, 2018 arrest and commitment to "the custody of [the] Wayne County Sheriff . . ." at the William Dickerson Detention Facility, *i.e.*, "Jail Division 3." (ECF No. 91, ¶ 14.) *See also* https://www.sheriffconnect.com/jail-division-3-william-dickerson-detention-facility/. Plaintiff alleges he informed the intake officials that he "required a C-PAP ma[c]hine due to him being diagnosed with sleep apnea[,]" and that his private physician had prescribed a C-PAP machine that he "used on a daily basis." (*Id.*, ¶¶ 15-16.) According to Plaintiff, he went without a C-PAP machine during the five-day window of August 30, 2018 through September 3, 2018, which caused him "to stop breathing and gasp for air while sleeping [and] awake with severe anxiety, depressio[n] and sleep deprivation." (*Id.*, ¶ 17.) Plaintiff claims to have filed "multiple grievances addressing Wayne County not providing him a C-PAP machine." (*Id.*, ¶ 18.)

On September 4, 2018, Plaintiff was transferred "downtown" to "Jail Division 1." (*Id.*, ¶ 19.) *See also* https://www.sheriffconnect.com/jail-division-1/.

---

[4] Although the heading for this argument lists only eight of the nine individual Wayne County Defendants, it is clear this argument was intended to include Defendant Napoleon. (*See* ECF No. 121, PageID.952, 954-955.)

Plaintiff alleges that, upon arriving at "Jail Division 1," he "was booked in and told by deputies he was moving to the fourth floor mental ward to receive a C-PAP machine."  (*Id*., ¶ 20.)

### b.    Repetitive allegations

The operative pleading identifies Al-Abid, Bayko, Bultz, Kegley, Leck, Loftis, and Murbach as deputy sheriffs employed at the Wayne County Jail (WCJ) "working 1st and 2nd shift at division 1 4th floor medical and mental health ward . . . [,]" (ECF No. 91, ¶ 4), Knaus as a 1st shift sergeant employed at WCJ Division 1 "4th floor medical and mental health ward . . . [,]" (*id*., ¶ 5), and Napoleon as the (then) Wayne County Sheriff (*id*., ¶ 6).  As to each of these nine individual Wayne County Defendants, Plaintiff alleges:

> Plaintiff personally handed kites and grievances to [Defendant] and spoke with [him/her] numerous times concerning him not receiving a C-PAP machine, medicine for lice, for him not receiving medical attention for throwing up blood, and having bloody black stools; for the living conditions he was being subjected to which included roaches, feces, black mold, lice, and contaminated water; for the mistreatment and disregard he was receiving from the [CCS] medical employees; and for the mistreatment and disregard her received from the Correction Care Solutions mental health employees.

(ECF No. 91, PageID.684-690 ¶¶ 45-51, 55-56.)  These same paragraphs allege that the foregoing "transpired from September 4, 2018, until May 2019[,]" (*id*.), *i.e.*, the period of his confinement at WCJ's Division 1 facility (*id*., PageID.675-

677 ¶¶ 19-20, 27).  According to Plaintiff, he was transferred to the Michigan Department of Corrections' custody in May 2019.  (*Id.*, ¶ 67 [Conclusion].)

To the extent Plaintiff "continually assigns the same general allegations" against these nine individual Wayne County Defendants, such allegations are akin to the "unadorned, the-defendant-unlawfully-harmed-me" accusations that are "no longer legally viable based on their speculative nature and facial implausibility." (*See* ECF No. 121, PageID.953-955; *id.*, PageID.956 (quoting *Iqbal*, 556 U.S. at 678).)

### c.      More pointed allegations

Aside from this general, repetitive language assigned to each of the nine individual Wayne County Defendants, Plaintiff makes the following, more pointed allegations (verbatim):

- Al-Abid on numerous occasions bald [sic] up the kites and grievances and threw them on the floor and in the trash right in front of the Plaintiff's face.

- Bayko told me several times 'welcome to [WCJ][,]' [and] verbally abused the Plaintiff continuously for writing kites, grievances, and bothering him with the Plaintiff's concer[n]s from December 31, 2018 through February 28, 2019.

- Bultz would ask the Plaintiff in a[] sarcastic manner numerous times 'what did the nurses say about your conditions', and also told him numerous times 'he cannot help him'.

10

- Kegley denied me speaking to a Sergeant, or Sheriff Napole[o]n numerous times, and would throw the kites and grievances I handed to him in the [garbage] in front of my face.

- Leck denied the Plaintiff to speak to the 2nd shift Sergeant numerous times[,] telling [Plaintiff] he [(Leck)] was the 2nd shift Sergeant.

- Loftis on numerous occasions would say in a sarcastic manner that the Plaintiff 'looked fine to him'.

- Murbach told the Plaintiff 'this is your punishment so live with it'.

- Knaus deliberately ignored the Plaintiff's issues he brought directly to his attention.  The Plaintiff informed Sergeant Knaus of the conduct of his deputies had committed destroying his grievances and kites and deliberately ignoring and disregarding his complaints, and verbally abusing him.  Sergeant Knaus did nothing to rectify the conduct of his subordinates, the living conditions he [was] being subjected to which is outlined in the foregoing Complaint or rectify the conduct of the [CCS] employees.  Nor did he care because he verbally abused the []Plaintiff from December 31, 2018 until February 28, 2019.

- [Napoleon] deliberately ignored the Plaintiff on these issues[].  The Plaintiff also informed the Sheriff in these kites and grievances about his deputies destroying his kites and grievances, and deliberate ignoring and disregarding his complaints, and verbally abused him.  Sheriff [Napoleon] did nothing to rectify the conduct of deputies, the living conditions, and all the foregoing violations outlined in this Complaint, or the Correct Care [Solution] employees.

(ECF No. 91, PageID.684-690 ¶¶ 45-51, 55-56.)  As noted above, these same

paragraphs allege that the foregoing "transpired from September 4, 2018, until

May 2019."  (*Id*.)

11

i.   **Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis, or Murbach**

As to Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis, or Murbach, Defendants contend that the amended complaint fails to "set forth the specific nature of the alleged civil rights violations . . . [,]" "describe how his harm was suffered by Defendants' alleged inaction or action," and "give any specific timeframe for when the alleged wrongful conduct occurred . . . [,]" but merely "gives the entirety of his duration at Division 1 as his timeframe." (ECF No. 121, PageID.953.)

Yet, even if these more pointed allegations are unique in the sense they are not repeated or duplicated as to each of the nine individual Wayne County Defendants, and even if the more pointed allegations offer *some* indication of the nature of Plaintiff's allegations against these Defendants, whatever pointedness they offer is reduced by their assignment of general timeframes – whether the eight or nine month timeframe (September 4, 2018, until May 2019) assigned to each or the separate two-month timeframe (December 31, 2018 to February 28, 2019) additionally assigned to Bayko and Knaus. And, while the Court "ordinarily stay[s] within the four corners of the complaint to determine whether the plaintiff has stated a plausible claim for relief[,]" *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022), the affidavits attached to Plaintiff's response to not cure this defect. Instead, Plaintiff's affidavit mentions the dates of August 30,

2018 (the date of his arrival at "Jail Division 3") and September 4, 2018 (the date of his arrival at "Jail Division 1") but only names individual Defendants Norris, Johnson, Gray, Deniess, Proper, Sharpe, and Montgomery (ECF No. 134, PageID.1085 ¶¶ 1, 3, 5, 9-16), and the affidavit of Aonral C. Jerry mentions the December 31, 2018 to February 28, 2019 two-month period but only names individual Defendants Johnson, Norris, and Gray (*id.*, PageID.1090 ¶¶ 1, 5, 6).

In sum, to use the Wayne County Defendants' descriptions, these allegations do not contain a "specific timeframe," let alone a "specific date," and have only a "generic" or "generalized" timeframe.  (ECF No. 121, PageID.953-954.) Accordingly, even though "[a] complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant[,]" *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976), Plaintiff's non-specific timeframe allegations against these Defendants do not provide each of them with "'fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

### ii.      Napoleon

As noted above, Plaintiff's more pointed allegations against Sheriff Napoleon include that he "deliberately ignored the Plaintiff on these issues," and that Plaintiff also "informed the Sheriff in these kites and grievances about his deputies destroying his kites and grievances, and deliberate[ly] ignoring and

13

disregarding his complaints, and verbally abus[ing] him[,]" and that "Sheriff [Napoleon] did nothing to rectify the conduct of deputies, the living conditions, and all the foregoing violations outlined in this Complaint, or the Correct Care [Solution] employees."  (ECF No. 91, ¶ 56.)

Defendants argue that Plaintiff's allegations against Napoleon "seem to contradict his previous allegations against other Wayne County Defendants[,]" contending that Plaintiff claims he "sent kites and grievances to Defendant Napoleon concerning the very complaints he alleges he made in his kites/grievances that he allegedly gave to the other Wayne County Defendants." (ECF No. 121, PageID.954-955.)  Here, Defendants seem to be referring to the "general, repetitive allegations" addressed above as to each of the nine individual Wayne County Defendants.  Also, the Court particularly notes Plaintiff's allegation that "Kegley denied [Plaintiff] speaking to a Sergeant, or Sheriff Napole[o]n numerous times, and would throw the kites and grievances [Plaintiff] handed to him in the [garbage] in front of my face."  (ECF No. 91, ¶ 48.)

Whatever the source of Defendants' perceived contradiction, Plaintiff's more pointed claims against Napoleon are also deficient.  As Defendants note, "Plaintiff does not allege how he sent said kites/grievances to Defendant Napoleon nor does he allege that Defendant Napoleon received them either.  This claim rests on speculation and facial implausibility."  (ECF No. 121, PageID.955.)  Having

reviewed the "more pointed allegations" against former Sheriff Napoleon (ECF

No. 91, ¶ 56), they do not provide Wayne County (or Napoleon's estate) with "'fair

notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atl.*

*Corp*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

### iii.        Failure to act

As noted above, Plaintiff alleges that Knaus and Napoleon "did nothing to

rectify" certain conduct or conditions.  (ECF No. 91, ¶¶ 55-56.)  Also, within his

"claims for relief," Plaintiff alleges that the nine individual Wayne County

Defendants "failed to intervene to prevent . . . the [CCS] employees from denying

[him] medical equipment, medical treatment for a serious medical need[,]" and did

so "maliciously and sadistically with deliberate indifference . . . ."  (*Id*., ¶ 72.)  (*See

also* ECF No. 134, PageID.1081 (referencing the "inaction" of the WCJ

Defendant(s) and CCS).)

However, Defendants correctly note that "supervisory liability under § 1983

cannot attach where the allegation of liability is based upon a mere failure to act."

*Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  (ECF No.

121, PageID.955.)  "Instead the liability must be based upon active

unconstitutional behavior."  *Id*. (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d

1241, 1245 (6th Cir. 1989)).

### iv.  Summation

### (a)  First Amendment

Defendants contend that "Plaintiff has made no allegations with respect to these defendants that they have violated his [F]irst [A]mendment rights." (ECF No. 121, PageID.953.) In his response, Plaintiff addresses First Amendment retaliation by contending he "has sufficiently alleged that he engaged in protected activity by filing a grievance and that he faced adverse action because of his protected conduct when he was sent to the mental health ward." (*See* ECF No. 134, PageID.1069-1070.)

However, while Plaintiff's amended complaint mentions the First Amendment, denial of access to the courts, interference with the grievance process, and retaliation, most of these instances do not specify which individual Defendant is allegedly at fault, or they name an individual Defendant who is not a party to the instant motion, such as Deniess and "John Doe deputies." (*See* ECF No. 91, PageID.672 [Introduction], 676 ¶ 21, 695 ¶¶ 76-77 [Claims for Relief], 698 ¶¶ E-F [Relief Requested].) Where these allegations mention a specific individual Wayne County movant currently before this Court (namely, Napoleon), Plaintiff does so by attempting a *Monell* claim (ECF No. 91, ¶ 62), which will be addressed in Section E.2 below, or by listing approximately nineteen Defendants by name and claiming they "interfered with deliberate indifference and denied the Plaintiff due

Process in available constitutionally protected remedies to alleviate his condition[,]" which was done "maliciously and sadistically with deliberate indifference[,]" (ECF No. 91, PageID.695 ¶ 75 [Claims for Relief]).

Taking into consideration the elements of a First Amendment retaliation claim (*see Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)) and a First Amendment access to courts claim (*see, e.g., Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (elements of a backward-looking denial of access claim), the collective mention of Defendants in this paragraph does not provide the nine individual Wayne County Defendants with "'fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

### (b)    Eighth Amendment

As to the Eighth Amendment, Defendants contend that Plaintiff's allegations "against these Defendants . . . do not rise to the level of deliberate indifference." (ECF No. 121, PageID.953.)  They contend that Plaintiff "fails to allege any subjective knowledge on the parts of [the nine individual Wayne County Defendants] regarding his allegedly serious medical needs[,]" his "Complaint fails to set forth how the alleged actions of [the nine individual Wayne County Defendants] led to his injury[,]" and his claims are akin to the "unadorned, the-defendant-unlawfully-harmed-me" accusations that are "no longer legally viable

based on their speculative nature and facial implausibility."  (ECF No. 121, PageID.955-956 (quoting *Iqbal*, 556 U.S. at 678).)  As Defendants put it, there is a lack of "specific allegations, context . . . proof of medication denial, proof of unsanitary conditions, . . . [or] substantiating medical evidence . . . [,]" to establish "a causal connection between plaintiff's alleged condition and Defendants actions or lack thereof[.]"  (ECF No. 121, PageID.958.)

In his motion response, Plaintiff addresses his Eighth Amendment claims by referencing:  (A) "deplorable or inhumane living conditions," such as exposure to black mold, roaches, contaminated water, fecal matter, and head lice; (B) refusal of or failure to provide medical treatment, such as for his sleep apnea, internal bleeding (blood in stool), abdominal pain, vomiting, *etc.*, ultimately leading to his hospitalization and near death, despite having written "numerous kites for medical treatment" and "grievances[;]" and, (C) "increased scrutiny" of his health care complaints and grievances while housed in the mental health ward, as detailed in certain *Monell* paragraphs of the amended complaint (ECF No. 91, ¶¶ 58-61). (ECF No. 134, PageID.1071-1077.)

However, while the amended complaint describes denial of "a sanitary environment" and "minimal civilized measure of life's necessities," these paragraphs do not mention an individual Defendant.  (ECF No. 91, ¶¶ 22-31.) Likewise, while the amended complaint describes denial of "medical care and

18

mental health care," the only individuals expressly mentioned in these paragraphs are non-parties to the instant motion, such as Norris, Gray, Johnson, Montgomery, Proper, Sharpe, and Deniess. (*Id.*, ¶¶ 32-35.) Moreover, while Plaintiff's amended complaint elsewhere makes references to the Eighth Amendment, denial of a sanitary environment, "deliberate indifference," and "medical needs," most of these instances do not specify which individual Defendant is allegedly at fault, or they name an individual Defendant who is not a party to the instant motion, such as Gray or Johnson. (*See* ECF No. 91, PageID.672 [Introduction], 680 ¶ 37, 683 ¶ 44, 696 ¶ 77 [Claims for Relief], 698 ¶ H [Relief Requested].) The paragraph mentioning his June 2019 hospitalization is also devoid of the name of an individual Defendant. (*Id.*, PageID.693 ¶ 68 [Conclusion].)[5] Finally, where allegations regarding "corporal punishment," the "4th floor mental health ward," and "medical devices" mention a specific individual Wayne County movant currently before this Court (namely, Napoleon, now deceased), Plaintiff does so by attempting a *Monell* claim (ECF No. 91, PageID.691 ¶¶ 57-61), which will be addressed in Section E.2 below. Taking into consideration the Eighth Amendment standards of "deliberate indifference to serious medical needs of prisoners" (*see*

---

[5] In this paragraph, Plaintiff refers to an "Affidavit." (ECF No. 91, ¶ 68.) However, the only affidavit attached to this pleading is the one verifying his amended complaint. (*Id.*, PageID.699.)

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) and deprivation of "the minimal

civilized measure of life's necessities" (*see, e.g.*, *Rhodes v. Chapman*, 452 U.S.

337, 347 (1981)), these paragraphs do not provide the nine individual Wayne

County Defendants with "'fair notice of what the ... claim is and the grounds upon

which it rests[.]'" *Bell Atl. Corp*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355

U.S. 41, 47 (1957)).[6]

### d.    Qualified immunity

In the event the Court finds that Plaintiff's Amended Complaint is not

deficient as to the claims against these nine individual Wayne County Defendants,

then Defendants argue that "Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis,

Napoleon & Murbach are entitled to qualified immunity." (ECF No. 121,

PageID.956.) Notwithstanding the alternative nature of this argument, it is based

on the assertions that "no rational juror could find that Defendant violated

Plaintiff's rights on the facts submitted by the parties" and "Plaintiff has failed [to

allege] how his constitutional rights were violated on the facts alleged." (ECF No.

---

[6] This section of the report (Subsection II.E.1.c.iv) places emphasis on mentioning specific individual defendants, because many of the referenced paragraphs contain communal language, without discernable distinction between them, making the paragraphs fall short of the "goal of the complaint . . . [,]" which is to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bommarito v. Equifax* 340 F.R.D. 566, 569 (E.D. Mich. 2022) (Patti, M.J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). (*See, e.g.*, ECF No. 91, ¶¶ 25, 32-33, 35, 57, 60, 61-62, 77.)

121, PageID.958.) In essence, the qualified immunity argument is more accurately one alleging that Plaintiff has "fail[ed] to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), or one for "judgment on the pleadings[,]" Fed. R. Civ. P. 12(b)(c). As a true qualified immunity argument, it is undeveloped.

### 2. Wayne County

Defendants not only contend that "Defendant Wayne County is unable to defend against a lawsuit that fails to set forth any legal cause of action, date of incident, or description of injury[,]" but also argue that Plaintiff "cannot establish a *Monell* claim against Wayne County." (ECF No.121, PageID.956, 958.) "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

### a. *Monell* allegations

In a section labeled, "*Monell* Claim," Plaintiff repeatedly and very broadly alleges that "[a]s outlined in the foregoing Complaint at all times from September 4, 2018, until May 2019[,] [t]here was an unwritten policy, custom, usage, in effect

21

at the [WCJ]," to do various things.  (ECF No. 91, ¶¶ 57-62.)  With a nod to the

Eighth Amendment, the alleged actions include:

- "[i]nflict corporal punishment upon pretrial detainees and inmates in Wayne Coun[t]y's custody by placing them on the 4th floor mental ward for writing grievances where the conditions are deplorable and inhumane."  It was "effectuated by Sheriff Benny Napole[o]n," and "enforced by [CCS] employees, and 4th floor [deputies] at the instruction of Psych Deniess."

- "subject mental health ward inmates with healthcare concer[n]s to 'increased scrutiny' due to their status of being mentally ill."

- "withhold medical devices from inmates due to costs between Wayne County and [CCS]."

- "withhold medical devices from inmates in contravention to their medical needs[,]" which was "[e]ffectuated and acquiesced to by Wayne County, Sheriff Napole[o]n, and Correct Care [Solutions], and carried out by all medical and custody employees at [WCJ]."

- "provide inadequate medical care to Wayne County inmates at the [WCJ] in contravention to their medical needs[,]" which was "[e]ffectuated by Wayne County, Sheriff Napole[o]n, and [CCS], and carried out by all medical and custody employees at [WCH]."

(ECF No. 91, PageID.690-691 ¶¶ 57-61.)  With a nod to the First

Amendment, the alleged actions include:

- "interfere and deny inmates constitutionally protected recourse in grievances remedies by destroying, disregarding, and discard[ing], and deliberately interfering with kites and grievances being wr[itten] on employees of both Correct Care, and Deputies, and upon the conditions and violations occurring

> in the [WCJ] against inmates[,]" which was "[e]ffectuated and
> acquiesced to by Wayne County, Sheriff Napole[o]n, and
> [CCS], and carried out by all medical and custody employees at
> Wayne County[.]"

(*Id*., PageID.691 ¶ 62.)  Plaintiff alleges he "personally witnessed the deputies, and

nurses reading grievances together in the bubbl[e] and at the desks, laughing and

throwing them away constantly . . . ."  (*Id*., PageID.692 ¶ 63.)

It is notable that the only Wayne County movants specifically mentioned in

the amended complaint's *Monell* paragraphs are Defendant Wayne County and

Defendant Napoleon.  (*See id*., ¶¶ 57-63.)

### b.    Municipal liability

Without citing any of the *Monell* paragraphs (*id*., ¶¶ 57-63), the Wayne

County movants contend that Plaintiff "has failed to identify any custom, policy,

practice and/or procedure which caused **<u>any</u>** alleged violation of Plaintiff's

constitutional rights."  (ECF No. 121, PageID.959 (emphasis in original).)  In light

of the above-detailed *Monell* paragraphs, the movants' assertion is not convincing.

Nonetheless, the Wayne County movants make a more convincing argument

by pointing out that, "where there is no constitutional violation by an individual

defendant, no liability remains against the municipality."  (*Id*.)  *See City of Los*

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no

constitutional injury at the hands of the individual police officer, the fact that the

departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

In response, Plaintiff contends his claims against "Wayne County Jail (She[r]iff)," which I interpret as Defendants Wayne County and/or Sheriff Napoleon in his official capacity, are "legally grounded in *Monell* . . . ." (ECF No. 134, PageID.1078.)[7]  Arguing that "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice[,]" *Memphis, Tennessee Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004), Plaintiff contends Defendant Wayne County (and/or Sheriff Napoleon in his official capacity) were "clearly made aware . . . of [various] unwritten policy, practice, or custom[s]" via certain of Plaintiff's grievances and health care requests; therefore, their failure "to address the complaints must mean that they acquiesced to the custom or practice of their employees['] conduct." (ECF No. 134, PageID.1079-1080.)  Plaintiff also contends he has demonstrated the elements to show "a custom

---

[7] Plaintiff defends his *Monell* allegations in much the same way he did when responding to the seven CCS Defendants' motion to dismiss (ECF No. 41), which, admittedly, challenged Plaintiff's original complaint (ECF No. 1). (*Compare* ECF No. 134, PageID.1078-1081; *with*, ECF No. 43, PageID.263-266.)  In any event, as I noted in my prior report and recommendation (*see* ECF No. 66, pageID.364 n.5), this report construes Plaintiff's response's allegation that Defendant Wayne County and/or Sheriff Napoleon and CCS "conspired together under an unwritten policy or custom[,]" (ECF No. 134, PageID.1079), as undeveloped.

of 'inaction . . . .'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018). (ECF No. 134, PageID.1080.)

However, if the Court agrees that Plaintiff has not successfully pleaded a constitutional claim as to any of the nine individual Wayne County movants, then, based on *Heller*, the Court should conclude that Plaintiff's amended complaint cannot sustain a related *Monell* claim against Wayne County and/or Sheriff Napoleon in his official capacity.

### E.    Conclusion

For the reasons stated above, the Court should **GRANT** the Wayne County Defendants' motion to dismiss (ECF No. 121).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 19, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE