UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DELON FLEMING,

                Plaintiff,                  Case No. 2:19-cv-12297

                                          District Judge Mark A. Goldsmith

v.                                Magistrate Judge Anthony P. Patti

WAYNE COUNTY JAIL, *et al.*,

                Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART CCS DEFENDANTS GRAY,
NORRIS & JOHNSON'S MOTION TO DISMISS (ECF No. 144) and
GRANT WAYNE COUNTY DEFENDANT JEAN'S MOTION TO DISMISS
(ECF No. 183)**

**I.**    **RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** CCS Defendants Gray, Norris & Johnson's motion to dismiss

(ECF No. 144) and **GRANT** Wayne County Defendant Jean's motion to dismiss

(ECF No. 183).

**II.**    **REPORT**

      **A.**    **Prior Pleadings**

      Michael Delon Fleming is currently incarcerated at the Michigan

Department of Corrections (MDOC) Kinross Correctional Facility (KCF), where

he is serving a sentence imposed on April 3, 2019.  *See* Case No. 18-9678-01-FC

(Wayne County).  (*See* www.michigan.gov/corrections, "Offender Search," last

visited Jan. 3, 2024.)  On August 5, 2019, Fleming filed the instant lawsuit against

multiple defendants, seemingly comprised of various Wayne County and Correct

Care, Inc. Defendants.  (ECF No. 1; *see also* ECF No. 31, PageID.200 [Demand

for Jury Trial].)  Various Defendants challenged the original complaint by way of

motions to dismiss (*see* ECF No. 41, 71, 77), which have since been addressed by

the Court (*see* ECF Nos. 66, 70, 84).

Plaintiff filed an amended complaint on February 15, 2022.  (ECF No. 82.)

However, on March 11, 2022, it was stricken from the record, and the Court

permitted Plaintiff to file a new amended complaint on or before April 10, 2022.

(ECF No. 84.)

### B.    The Operative Pleading

In his amended complaint, hand-dated April 8, 2022, but post-marked and

filed effective April 11, 2022, Plaintiff names approximately twenty-one

Defendants, each sued in official and individual capacities.  (ECF No. 91,

PageID.673-675 ¶¶ 4-13.)[1]  The factual allegations underlying Plaintiff's amended

---

[1] In the original complaint, Plaintiff listed Wayne County Jail (WCJ), the Wayne County Sheriff's Department, and Benny Napoleon (former Wayne County Sheriff) together.  (ECF No. 1, PageID.1, 3.)  By comparison, in the April 11, 2022 amended complaint, Plaintiff lists Napoleon and Wayne County separately (ECF No. 91, PageID.673 ¶¶ 6, 7).  And, among the amended complaint's listed Defendants are "John Doe deputies" and "John Doe [nurses]."  (*See id*., PageID.673-674, 676 ¶¶ 4, 8, 21, 78.)  This report assumes these references are nothing more than Plaintiff's attempts at place-holders.

complaint span the period from August 30, 2018 (the date of his arrest and intake) – seemingly through his April 3, 2019 sentencing – to June 2019 (when he was rushed to McLaren Greater Lansing Hospital).  (ECF No. 91, PageID.675-693 ¶¶ 14-70.)

### 1.   One (1) identified Wayne County Defendant, Edward Jean, remains before the Court.

Wayne County Defendants have previously filed:  (a) a November 2022 motion to dismiss (ECF No. 121), as to which Plaintiff filed a response (ECF No. 134); and, (b) an April 2023 motion for summary judgment (ECF No. 145), as to which Plaintiff filed a response (ECF No. 149, PageID.1263-1268).[2]

On April 24, 2023, following a report and recommendation (ECF No. 141), the Court dismissed without prejudice Defendants Sabiation, Biaz (or Diaz), and Deniess.  (ECF No. 147.)  On August 4, 2023, following another report and

---

[2] Plaintiff's May 10, 2023 "response to Defendant's [sic] motion for summary judgment" (ECF No. 149, PageID.1263-1268), also contained a brief "motion for partial summary disposition by court order demanding the Defendants initiate resolution and/or settlement stages," (*see id*., PageID.1269-1270), which does not seem to have been separately addressed by the Court.  However, to the extent these pages (*id*.) reference default, Plaintiff since has filed several default related requests regarding Defendant Jean (ECF Nos. 158, 162, 163, 164), the Clerk of the Court denied entry of default as to Jean on June 21, 2023 (ECF No. 165), Plaintiff filed another default-related motion in July 2023 (ECF No. 167), the Undersigned entered an order in September 2023 directing the USMS to attempt personal service as to Defendant Jean (ECF No. 174); and, Jean was served in October 2023 (ECF Nos. 181, 182).

recommendation (ECF No. 150), the Court granted Al-Abid, Bayko, Bultz, Kegley, Knaus, Leck, Loftis, Napoleon, Murbach, & Wayne County's motion to dismiss (ECF No. 121).  (ECF No. 169.)  Although Plaintiff appealed this order, the Sixth Circuit dismissed the appeal on October 4, 2023.  (ECF Nos. 170, 179, 180.)

It seems the only remaining, identified Wayne County Defendant is Defendant Jean, as to whom service of process has taken a circuitous route.  (*See, e.g.,* ECF Nos. 88, 99, 113, 115, 129, 130, 132, 158, 160, 161, 162, 163, 164, 165, 167, 168, 174.)  On or about October 5, 2023, the USMS attempted service of process (ECF Nos 181, 182), and Defendant Jean has since appeared (ECF No. 183).

### 2.    Three (3) Correct Care Solutions Defendants remain before the Court.

Seven contract Defendants – Correct Care Solutions (CCS), Amy Gray, R.N., Dominique Montgomery, Alice Norris, Jamie Sharpe, Paige Proper, and Erika Johnson ("the CCS Defendants") – have appeared.  (ECF Nos. 32, 36, 38, 39.)  All seven challenged the original complaint (ECF No. 41); however, following a report and recommendation (ECF No. 66), the Court granted in part and denied in part the motion as follows:

> The Court dismisses Fleming's First Amendment retaliation claim against all of the [CCS] Defendants and dismisses Fleming's Fourteenth Amendment deliberate indifference claim against

Defendants Proper, Sharpe, Montgomery, and [CCS].  The Court also dismisses Fleming's Fourteenth Amendment deliberate indifference claim against [CCS] Defendants Norris, Johnson, and Gray, but grants Fleming leave to file an amended complaint for the sole purpose of clarifying the scope of his Fourteenth Amendment deliberate indifference claim against [CCS] Defendants Norris, Johnson, and Gray.

(ECF No. 70, PageID.376-377.)

This report interprets the Court's January 24, 2022 order as having dismissed CCS Defendants Proper, Sharpe, Montgomery, and CCS and as having *only permitted amendment as to CCS Defendants Norris, Johnson, and Gray* for clarification of the Fourteenth Amendment deliberate indifference claim.  The order further instructed:

The amended complaint must confirm the constitutional bases of his claims against them; include any detail that he offered in his response to the motion to dismiss ([ECF No.] 43); provide further specificity, such as dates on which events occurred, to the extent possible; and *set forth facts supporting the objective and subjective components of this claim*.  The amended complaint must be filed by February 16, 2022.

(*Id.*, PageID.377 (emphasis added).)

## C.    Pending Motions

Judge Goldsmith has referred this case to me for pretrial matters.  (ECF Nos. 25, 84, 96.)  Currently before the Court are two dispositive motions:

1.    CCS Defendants Gray, Johnson, and Norris's April 5, 2023 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (ECF No. 144), as to which Plaintiff has submitted a response (ECF No. 148), and CCS Defendants

Gray, Norris, and Johnson have filed a reply (ECF No. 151);
and,

2.   Wayne County Defendant Jean's October 27, 2023 motion to
dismiss (ECF No. 183), as to which Plaintiff has filed a
response (ECF No. 185).

These motions are now ready for decision.[3]

### D.   Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action"). Facial plausibility is established "when the

---

[3] Plaintiff's responses to these dispositive motions were due on May 5, 2023 and
November 27, 2023. (*See* ECF Nos. 146, 184.) Although the responses were filed
on May 10, 2023 (ECF No. 148) and December 4, 2023 (ECF No. 185), they are
dated and post-marked May 1, 2023 / May 2, 2023 and November 27, 2023 /
November 28, 2023. (ECF No. 148, PageID.1261-1262; ECF No. 185,
PageID.1462-1463.) Therefore, the responses are timely. *See Houston v. Lack*,
487 U.S. 266, 270-271 (1988).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

### E.    Discussion

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

Preliminarily, I note that my May 2023 report and recommendation discussed Plaintiff's claims against nine individual Wayne County Defendants (ECF No. 150, PageID.1278-1293), as well as those against Defendant Wayne County (*id.*, PageID.1293-1297), and, in the end, recommended the Court grant the Wayne County Defendants' motion to dismiss (*id.*, PageID.1273, 1297). In August 2023, the Court accepted the recommendation, granted the Wayne County Defendants' motion to dismiss (ECF No. 121), and denied as moot Defendants' motion for summary judgment (ECF No. 145). (ECF No. 169.) Accordingly, where similar allegations are at issue in the present motion, this report endeavors to make recommendations – whether as to CCS Defendants Gray, Norris, and Johnson or remaining Wayne County Defendant Jean – that are consistent with the Court's prior recommendations as to Plaintiff's claims against other Wayne County Defendants.

### 1.    Foundational allegations

#### a.    Identification of movants

Within the operative pleading, Plaintiff identifies Jean as one of several deputy sheriffs employed at the WCJ, Division 1 "working 1st and 2nd shift . . . 4th floor medical and mental health ward . . . ."  (ECF No. 91, ¶ 4.)  Gray, Norris, and Johnson are identified as "RN charge nurses employed by [CCS] who render

medical services at the [WCJ] division 1 medical health ward [on the] 4th floor during the events described in this Complaint."  (*Id*., ¶ 8.)

### b.   Introductory allegations

The facts underlying this matter stem from Plaintiff's alleged August 30, 2018 arrest and commitment to "the custody of [the] Wayne County Sheriff . . ." at the William Dickerson Detention Facility, *i.e.*, "Jail Division 3."  (ECF No. 91, ¶ 14.)  *See also* https://www.sheriffconnect.com/jail-division-3-william-dickerson-detention-facility/.  Plaintiff alleges he informed the intake officials that he "required a C-PAP ma[c]hine due to him being diagnosed with sleep apnea[,]" and that his private physician had prescribed a C-PAP machine that he "used on a daily basis."  (*Id*., ¶¶ 15-16.)  According to Plaintiff, he went without a C-PAP machine during the five-day window of August 30, 2018 through September 3, 2018, which caused him "to stop breathing and gasp for air while sleeping [and] awake with severe anxiety, depressio[n] and sleep deprivation."  (*Id*., ¶ 17.)  Plaintiff claims to have filed "multiple grievances addressing Wayne County not providing him a C-PAP machine."  (*Id*., ¶ 18.)

On September 4, 2018, Plaintiff was transferred "downtown" to "Jail Division 1."  (*Id*., ¶ 19.)  *See also* https://www.sheriffconnect.com/jail-division-1/.  Plaintiff alleges that, upon arriving at "Jail Division 1," he "was booked in and told by deputies he was moving to the fourth floor mental ward to receive a C-PAP

9

machine." (*Id.*, ¶ 20.) He describes the "denial of a sanitary environment" (*id.*, ¶¶ 22-26) and the "denial of minimal civilized measure of life's necessities" (*id.*, ¶¶ 27-31).

### 2. "Denial of medical care and mental health care" as to RNs Gray, Norris, and/or Johnson

As to "denial of medical care and mental health care," Plaintiff alleges:

- The Plaintiff wrote medical kites *continuously*, in addition to grievances about being placed on the 4th floor mental ward for receiving a C-PAP machine, yet he was never provided a C-PAP machine the entire time he was confined ther[e] which was September 4, 2018, until May 2019. He *personally informed Alice Norris, Amy Gray, and Erika Johnson*, [and others] the entirety of this confinement on a daily basis about not receiving this C-PAP machine . . . .

- The Plaintiff wrote medical kites *continuously*, in addition to grievances about having severe pain in his stomach, about throwing up blood, about having black bowel movements, and about suffering from anxiety, . . . in addition to depression and *personally informed Alice Norris, Amy Gray, [E]rika Johnson*, [and others] about the need for medical & mental health attention on a daily basis from September 4, 2018 until May 2019. The Plaintiff was never seen or provided any medical treatment the entirety of his stay confined on the 4th floor from September 4, 2018, until May 2019.

- The Plaintiff wrote medical kites [*continuously*], in addition to grievances about catching lice and needing some treatment to cure this affliction. The Plaintiff *personally informed Alice Norris, Amy Gray, Erik[a] Johnson*, [and others] on . . . a daily basis. The Plaintiff was never provided any treatment to counter the lice infestation he suffered from. This occurred from September 4, 2018, until May . . . 2019.

(ECF No. 91, ¶¶ 32, 33, 35 (italics added).)  Although these paragraphs also

reference "all of the deputy [Sheriffs] who are parties to this suit . . . [,]" Plaintiff

does not specifically name Jean.  (*Id*.)

Plaintiff's allegations that he "wrote medical kites continuously, in addition

to grievances" on a variety of subjects and "personally informed" Defendants

Norris, Gray, and Johnson, among others, "on a daily basis," but was never

provided "a C-PAP machine," "any medical treatment," or "any treatment to

counter the lice infestation . . . [,]" (*see id*., ¶¶ 32, 33, 35), are described by CCS

Defendants Gray, Norris, and Johnson as "copied and pasted . . . ."  (ECF No. 144,

PageID.1162.)  More accurately, these paragraphs follow a similar, albeit not

exact, form, changing the subject at issue.  Still, "Plaintiff must state a plausible

constitutional violation against each individual defendant—the collective acts of

defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*,

680 F.3d 617, 626 (6th Cir. 2012).  As the CCS Defendants aptly note, these

averments do not "outline the individual knowledge and actions of any one

defendant[,]" and essentially allege that "'everyone was aware of everything,' all

the time[.]"  (ECF No. 144, PageID.1162.)  (*See also* ECF No. 151, PageID.1300-

1301.)  In other words, these allegations are "unwarranted factual inferences,"

which "the Court need not accept as true . . . ." *Grindstaff v. Green*, 133 F.3d 416,

421 (6th Cir. 1998) (citations omitted).  (ECF No. 144, PageID.1163.)

By comparison, Plaintiff makes more individualized allegations in Paragraph

34.

- The Plaintiff was approached in his cell by Erika Johnson who gave the Plaintiff a container to collect a stool sample from the Plaintiff to be tested.  Upon returning the stool sample back to Erika Johnson who upon receiving this took the sample and passed it to Amy Gray.  I [saw] this through the glass window of medical health because it is also located on []the 4th floor. Where I then saw Amy Gray immediately throw away the sample in the trash, and then immediately . . . came . . . to my cell and told me nothing is wrong with you stop writing all these kites.  She d[id] this instead of testing the stool [s]ample and Erika Johnson never further requested treatment for the Plaintiff after witnessing Amy Gray commit this unlawful conduct.  This occurred between September 4, 2018, and May 2019.  I cannot recall the specific date due to the extreme sleep deprivation, emotional distress, and the fact that I was never given a kite response or grievance response due to them being repeatedly destroyed, thr[own] away, and disregarded.

(ECF No. 91, PageID.679.)  While CCS Defendants Gray, Norris, and Johnson

contend that this paragraph "is not enough to support deliberate indifference claims

against the remaining CCS Defendants[,]" (ECF No. 144, PageID.1163), this is

only partially true.  Indeed, Paragraph 34 does not mention Norris.

However, Paragraph 34 particularly describes Plaintiff's interaction(s) with

Johnson and Gray regarding collection of a stool sample.  (ECF No. 91,

PageID.679.)  The CCS Defendants contend that "Plaintiff does not offer facts on

why he was given the stool sample cup[,]" (ECF No. 144, PageID.1164); yet, the

immediately preceding paragraph mentions, *inter alia*, severe stomach pain,

throwing up blood, having black bowel movements (*id*., ¶ 33), and, as will be discussed below, "blood in stool" is mentioned within several other paragraphs of the operative pleading (*see id*., ¶¶ 36-43, 45-56), including some that also mention Norris, Gray, and Johnson (*see id*., ¶¶ 36, 37, 38).[5]  The CCS Defendants also take issue with Paragraph 34's use of an "eight (8) month period . . . [,]" (ECF No. 144, PageID.1164); yet, the period of September 4, 2018 to May 2019 aligns with his alleged transfer into WCJ Division 1 prior to his transfer into MDOC custody, where he was placed in quarantine.  (ECF No. 91, ¶¶ 19, 27-28, 67.)  Here, although this is a generic or generalized timeframe, Plaintiff's description of the incident in question should enable Defendants Johnson and/or Gray to defend a related claim against them.[6]  And, Plaintiff clearly alleges a resulting injury, namely, in June 2019, he collapsed in his cell, was rushed to McLaren Greater Lansing Hospital, was admitted for a gastrointestinal bleed, was discharged with multiple diagnoses, and, later, was found to have diverticulosis.  (*Id*., ¶¶ 67-70; *see*

---

[5] Additionally, the Court notes that Plaintiff turned 50 years of age on October 5, 2023.  *See* www.michigan.gov/corrections, "Offender Search."  *See also* https://medlineplus.gov/ency/article/007465.htm#:~:text=Flexible%20sigmoidosco py%20every%205%20years,Colonoscopy%20every%2010%20years (last visited Jan. 8, 2024) ("Health screenings for men ages 40 to 64").

[6] To be sure, the Undersigned has faulted other paragraphs of the operative pleading (*see* ECF No. 91, PageID.684-690 ¶¶ 45-51, 55-56), for their "'generic' or 'generalized' timeframe."  (ECF No. 150, PageID.1283-1285.)  (*See also* ECF No. 134, PageID.1085 ¶¶ 9-15 [Plaintiff's May 2021 Declaration]; *id*., PageID.1090 ¶¶ 5-7 [Aonral C. Jerry January 6, 2021 Affidavit].)

*also id.*, ¶¶ 37, 38.)  In other words, Plaintiff alleges that he complained of a series of gastro-intestinal ailments and, yet, had his stool sample deliberately discarded while at the WCJ; within a month of his transfer to the MDOC, he had to be rushed to the hospital for the same ailments toward which CCS Defendants Johnson and Gray had shown deliberate indifference.

In sum, at this stage, with regard to Paragraph 34, the Court should disagree that the operative pleading fails to "clearly identify [Plaintiff's] alleged serious medical need" or "provide facts from which to infer [Johnson and/or Gray] were aware of [such] risk and consciously disregarded it."  (ECF No. 144, PageID.1164.)  Put another way, the Court should not conclude that Plaintiff's amended complaint "fails to comply" with the December 28, 2021 report and recommendation's direction (*see* ECF No. 66, PageID.360) or the January 24, 2022 order (*see* ECF No. 70, PageID.377) regarding the objective and subjective components of this type of claim.  (ECF No. 144, PageID.1165.)

### 3. "Interfering, denying, and disregarding his constitutionally protected remedies" as to RNs Gray, Norris, Johnson, and/or Deputy Jean

Also, as to "interfering, denying, and disregarding his constitutionally protected remedies," Plaintiff alleges the following as to Gray, Norris, Johnson, and/or Deputy Jean, with the more particular allegations emphasized:

- The Plaintiff gave numerous kites and grievances to Alice Norris concerning him not being given a C-PAP machine or

14

lice medication, throwing up blood, having blood in his stool, having black stools, and emotional stress.  She tore up the kites . . . in my face always stating[,] "there's nothing wrong with you".  This happened continuously from [September] 4, 2018, until May 2019.  She always done this without doing any investigation in the matter, which caused the Plaintiff to suffer from pain, internal bleeding, and resulted in him still having [peptic] ulcers and being anemic until this present day.

- The Plaintiff gave numerous kites and grievances to Amy Gray concerning him not being given a C-PAP machine, or lice medication, throwing up blood, having blood in his stool, and having black stools.  She told Erika Johnson after she threw away the black and bloody stool sample upon seeing her talk to me again during a scheduled round she approached . . . telling her and him "that it [wasn't] anything wrong with him" deliberately to show . . . bias towards the Plaintiff for saying he was going to file a [grievance] on [her to] Erika Johnson for throwing away the stool sample and not testing it.  The Plaintiff personally told Amy Gray about his problems in addition to the kites and grievances.  All of the foregoing transpired from September 4, 2018, until May 2019.  Amy Gray never investigated the matter and always disregarded the Plaintiff's medical needs causing him to suffer from pain, internal bleeding, and [resulted] in him having [peptic] ulcers and being anemic until this present day.  . . .

- The Plaintiff gave numerous kites and grievances to Erika Johnson concerning him not being given a C-PAP machine, or lice medication, throwing up blood, having blood in his . . . stool[,] [w]hich she disregarded in addition to her seeing Amy Gray throw away the stool sample she presented to her, which she knew was improper conduct[.]  [S]he never further requested medical treatment for the Plaintiff to see why there was blood in his stool or why it was black.  The Plaintiff personally informed Erika Johnson about the foregoing on a daily basis.  All of the foregoing transpired o[n] September 4, 2018, until May 2019.  This caused the Plaintiff to suffer from pain, internal bleeding, and resulted in him having [peptic]

ulcers and being anemic and having PTSD . . . until this present day.

- The Plaintiff personally handed kites and grievances to Deputy E Jean . . . and spoke with him numerous times concerning the Plaintiff not receiving a C-PAP machine, medicine for lice, for him not receiving medical attention for throwing up blo[o]d, and having bloody black stools; for the [living] conditions he was being subjected to which included roaches, feces, black mold, lice, and contaminated water; for the mistreatment and [disregard] he received from the [CCS] mental health employees.  Deputy E. Jean told the Plaintiff on numerous occasions that nothing was wrong with him in addition to putting his kites and [grievances] in the trash in front of him[.] Deputy E Jean in addition verbally abused the [Plaintiff] [December] 31, 2018 until February 28, 2019.  The foregoing transpired from September 4, 2018, until May 2019.  This caused the Plaintiff to suffer from pain, internal bleeding, [peptic] ulcers, anemia, and PTSD until this present day.

(*Id.*, ¶¶ 36, 37, 38, 54.)

Plaintiff's allegations that he gave Norris, Gray, and Johnson "numerous kites and grievances" about a variety of subjects (*id.*, ¶¶ 36, 37, 38), and perhaps even a similarly constructed paragraph as to Jean (*id.*, ¶ 54), are described by the CCS Defendants as "nothing but copy and paste jobs with the names changed in the paragraph."  (ECF No. 144, PageID.1162.)  More accurately, as noted above with respect to the collectively phrased paragraphs (¶¶ 32, 33, and 35), Paragraphs 36, 37, 38, and 54 follow their own similar, albeit not exact, form, this time *alternating* Norris, Gray, Johnson, and Jean's names.  Still, notwithstanding the above recommendation that Paragraph 34 states a cause of action against

16

Defendants Johnson and Gray (Section II.E.2) – which by extension would include consideration of similar allegations elsewhere in the operative pleading (such as ¶¶ 37, 38) – even the more particularized allegations as to Norris and Jean (¶¶ 36, 54) are not sufficiently specific.  As Defendant Jean aptly contends in his motion, the Fed. R. Civ. P. 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  (*See* ECF No. 183, PageID.1456-1457.)

the allegations in Paragraph 34 may be viewed in conjunction with Paragraph 37, which concerns Gray, and Paragraph 38, which concerns Johnson.

### 4.    "Claims for relief"

Plaintiff's "claims for relief" reference the First, Eighth, and Fourteenth Amendments.  (ECF No. 91, ¶¶ 72-79.)  Yet, the Court's assessment of these claims should be informed by the Court's prior, January 24, 2022 ruling, which, *inter alia*, "dismisse[d] Fleming's Fourteenth Amendment deliberate indifference claim against Defendants Proper, Sharpe, Montgomery, and [CCS][,]" "dismisse[d] Fleming's Fourteenth Amendment deliberate indifference claim against Defendants Norris, Johnson, and Gray," but "grant[ed] Fleming leave to file an amended complaint for the sole purpose of clarifying the scope of his Fourteenth Amendment deliberate indifference claim against Defendants Norris, Johnson, and Gray."  (ECF No. 70, PageID.376-377.)

17

a.    **Jean (8th and 14th Amendments)**

Within a section of his amended complained labeled, "Claims for Relief,"

Plaintiff alleges that Jean is among those whose actions:

- "failed to intervene to prevent . . . [CCS] employees from denying the Plaintiff medical equipment, medical treatment for a serious medical need.  This was done maliciously and sadistically with deliberate indifference and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and through the 14th Amendment of the United States Constitution under the equal protection of the laws and due process, due to the Plaintiff being a pretrial detainee."

- "maliciously and sadistically with deliberate indifference imposed and subjected the Plaintiff to a[n] unsanitary environment, and denied him minimal civilized measure of life's necessities which constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and through the 14th Amendment of the United States Constitution under the equal protection of the laws and due process, due to the Plaintiff being a pretrial detainee[.]"

(ECF No. 91, ¶¶ 72-73.)

Preliminarily, Plaintiff was a pre-trial detainee at the time of the allegations in question.  (*Id*., PageID.672.)  "While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."  *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992) (citations omitted).  That said, to the extent Plaintiff lists approximately twelve Defendants by name (including **Jean**), alleging they "failed to intervene to prevent

18

. . . [CCS] employees from denying the Plaintiff medical equipment, medical treatment for a serious medical need[,]" and did so "maliciously and sadistically with deliberate indifference . . . [,]" (*id.*, ¶ 72), which purportedly resulted in a violation of the Eighth Amendment, and consistent with the Undersigned's prior report and recommendation as to this particular paragraph (*see* ECF No. 150, PageID.1287), "'supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.'" *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). (ECF No. 121, PageID.955.) "Instead the liability must be based upon active unconstitutional behavior." *Id.* (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)).

To the extent Plaintiff lists approximately twelve Defendants by name (including **Jean**), claiming they "maliciously and sadistically with deliberate indifference imposed and subjected the Plaintiff to a[n] unsanitary environment, and denied him minimal civilized measure of life's necessities . . . [,]" (*id.*, ¶ 73), which purportedly resulted in cruel and unusual punishment in violation of the Eighth Amendment, my recommendation is consistent with my earlier (May 19, 2023) approach as to a  similarly styled First Amendment paragraph (*e.g.*, ECF No. 91, ¶ 75 & ECF No. 150, PageID.1288-1289).  Taking into consideration the Eighth Amendment standards of "deliberate indifference to serious medical needs of prisoners" (*see Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) and deprivation of

19

"the minimal civilized measure of life's necessities" (*see*, *e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), the collective mention of Defendants in this paragraph does not provide Jean with "'fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp.*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  (*See* ECF No. 150, PageID.1289.)

> **b.    Jean, Gray, Norris, and/or Johnson (1st, 8th and 14th Amendment and state law claims)**

Moreover, Plaintiff claims that the actions of Jean, Gray, Norris, and/or Johnson and others:

- denied the Plaintiff medical equipment, and medical treatment for a serious medical need.  This was done maliciously and sadistically with deliberate indifference and constituted cruel and unusual punishment in violation of the *Eighth Amendment* of the United States Constitution and through the *14th Amendment* of the United States Constitution under the equal protection of the laws and due process, due to the Plaintiff being a pretrial detainee.

- interfered with deliberate indifference and denied the Plaintiff due Process in available constitutionally protected remedies to alleviate his condition.  This was done maliciously and sadistically with deliberate indifference.  This constituted denial of access to the courts under the *1st Amendment* of the United States Constitution which denied the Plaintiff due process under the *14th Amendment* of the United States Constitution.

- constituted "the tort of negligence and gross negligence under the law of Michigan."

(ECF No. 91, ¶¶ 74, 75, 78 (emphases added).)  Plaintiff's further allegation regarding "[t]he actions of all parties to this suit at all times . . . [,]" does not specifically mention Jean, Gray, Norris, or Johnson.  (*Id.*, ¶ 77.)

To the extent Plaintiff lists eight Defendants (including Gray, Norris, and Johnson), claiming they "denied the Plaintiff medical equipment, and medical treatment for a serious medical need," which was done "maliciously and sadistically with deliberate indifference . . . [,]" purportedly constituting "cruel and unusual punishment . . . [,]" (ECF No. 91, ¶ 74), the Court's ruling should be consistent with its foregoing recommendation as to Paragraph 73, which listed approximately twelve Defendants and an "unsanitary environment[.]"  Taking into consideration the Eighth Amendment standards of "deliberate indifference to serious medical needs of prisoners" (*see Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) and deprivation of "the minimal civilized measure of life's necessities" (*see*, *e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), the collective mention of Defendants in this paragraph does not provide Gray, Norris, or Johnson with "'fair notice of what the ... claim is and the grounds upon which it rests[.]'"  *Bell Atl. Corp.*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). (*See* ECF No. 150, PageID.1289.)

To the extent Plaintiff lists approximately nineteen Defendants by name (including Jean, Gray, Norris, and Johnson), claiming they "interfered with

deliberate indifference and denied the Plaintiff due Process in available

constitutionally protected remedies to alleviate his condition[,]" which was done

"maliciously and sadistically with deliberate indifference[,]" (ECF No. 91,

PageID.695 ¶ 75), which purportedly resulted in the denial of his access to the

courts under the First Amendment, the Undersigned's prior report and

recommendation considers this particular paragraph.  (*See* ECF No. 150,

PageID.1288-1289.)  As noted then, taking into consideration the elements of a

First Amendment retaliation claim (*see Thaddeus-X v. Blatter*, 175 F.3d 378, 394

(6th Cir. 1999)) and a First Amendment access to courts claim (*see*, *e.g.*, *Flagg v.*

*City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (elements of a backward-looking

denial of access claim), the collective mention of Defendants in this paragraph

does not provide Jean with "'fair notice of what the ... claim is and the grounds

upon which it rests[.]'"  *Bell Atl. Corp.*, 550 U.S. at 555 (*quoting Conley v. Gibson*,

355 U.S. 41, 47 (1957)).

While Paragraphs 74 and 75, by themselves, do not adequately allege claims

against Defendants Johnson and Gray, these paragraphs may, nonetheless, be

viewed in conjunction with Paragraph 34, consistent with the above

recommendation that Paragraph 34 states a cause of action against Defendants

Johnson and Gray (*see* Section II.E.2).

Finally, Plaintiff alleges that "[t]he failure of . . . Edward Jean, . . . Amy Gray, Alice Norris, Erika Johnson [and others] . . . for the claims outlined in the [foregoing] Complaint . . . constitutes the tort of negligence and gross negligence under the law of Michigan." (*Id.*, ¶ 78.)  If the Court agrees with the foregoing recommendations – namely that most of Plaintiff's claims against the movants should be dismissed – then it should decline to exercise supplemental jurisdiction over any related, state law tort claims (*id.*, ¶ 78).  *See* 28 U.S.C. § 1367 ("Supplemental jurisdiction").

### 5.  Plaintiff's responses do not aid his cause.

#### a.  Purported response to CCS Defendants' motion

Plaintiff's May 10, 2023 response is purportedly filed with regard to "Defendant's [sic] motion to dismiss."  (ECF No. 148, PageID.1253; *see also id.*, PageID.1255, 1257, 1258, 1260, 1261.)  However, the response also refers to the Wayne County Defendants, cites Fed. R. Civ. P. 56, and refers to portions of the Wayne County Defendants' motion for summary judgment argument section (ECF No. 145, PageID.1179-1188).  (ECF No. 148, PageID.1253-1254, 1257, 1258-1260, 1261.)  Additionally, it references default, default judgment, and Fed. R. Civ. P. 55.  (*Id.*, PageID.1254, 1258.)  The response does not appear to refer to Gray, Norris, and Johnson's motion to dismiss (ECF No. 144).  (*See also* ECF No. 151, PageID.1300.)  Nonetheless, with respect to the CCS Defendants' motion, the

Undersigned's recommendation is not based solely on Plaintiff's apparent failure to respond; rather, my recommendation is based on "the merits of the underlying motion." *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991).

**b.    Response to Defendant Jean's motion**

In Plaintiff's December 4, 2023 response, he claims to have "state[d] an adequate amount of fact that the trier of facts can determine that Defendant Jean violated Plaintiff Fleming's 8th Amendment right under 'Deliberate Indifference'." (ECF No. 185, ¶ 1; *see also id.*, ¶ 12.)  Plaintiff contends he "clearly states that he gave Defendant Jean several health care kites and grievances on the living conditions that he was subjected to and his health concerns[,]" (*id.*, ¶ 2), further contends that Jean "showed a Deliberate disregard for [his] health by telling Plaintiff[,] 'There was nothing wrong with [him]' and then th[rowing] the kites and grievances in the trash[,]" (*id.*, ¶ 3), also contends Plaintiff "gave Defendant Jean several medical kites and grievances, stating that he had bloody stool[,]" again referring to throwing away kites and grievances (*id.*, ¶ 8), and additionally contends Jean "actively destroyed kites and grievances[,]" allegedly resulting in the denial of medical treatment (*id.*, ¶ 9) and the worsening of his conditions (*id.*, ¶ 11).  These contentions appear to align with the amended complaint's Paragraph 54, which expressly mentions Jean (*see* ECF No. 91, PageID.688); however, this

report explains above why Paragraph 54 is, by itself, not sufficiently individualized (*see* Section II.E.3).

Plaintiff also claims – perhaps in response to Defendant Jean's statement that he "is unable to defend against a lawsuit that fails to set forth any . . . date of incident," (ECF No. 183, PageID.1457) – that Plaintiff "does not have specific dates and times that these event[s] happened," maintaining this "does not mean that he is not entitled to discovery and further litigation of the case." (ECF No. 185, ¶ 4.) He contends that "[o]ne of [his] discovery requests reveals that Defendant Jean work[ed] the floor with Plain[t]iff 13 times in the time period mentioned in Plaintiff's complaint[,]" (*id.*, ¶ 5), and he references "newly added evidence of the time clock log-ins provided by the defendant[,]" (*id.*, ¶ 12).[7] Additionally, and likely in response to Defendant Jean's statement that Plaintiff "fails to allege any subjective knowledge on the part of Defendant Jean regarding his allegedly serious medical needs[,]" (ECF No. 183, PageID.1457), Plaintiff: (i) contends the amended complaint's references to "bloody stool," – which, in Plaintiff's words, "can mean several factors like internal bleeding[,]" – satisfy the "objective component" of an Eighth Amendment deliberate indifference to a serious medical

---

[7] Based on Plaintiff's March 14, 2023 motion to compel discovery, it seems Plaintiff served subpoenas in June 2022. (ECF No. 117, PageID.902-905 [to Wayne County Sheriff Raphael Washington], 906-909 [to Wayne County]; *see also* ECF No. 136, PageID.1102-1103.)

need claim (*id*., ¶ 7); and, (ii) seems to contend the amended complaint adequately alleges facts regarding the subjective component (*id*., ¶ 8).  However – setting aside the issue of dates, what Plaintiff has discerned through discovery, or Plaintiff's seeming reliance on his allegations as to other Defendants – the *operative pleading* does not allege that *Jean* "knew of [Plaintiff's] serious medical need . . . [,]" and that, "despite this knowledge, [*Jean*] disregarded or responded unreasonably to that need."  *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (applying the Fourteenth amendment to a pretrial detainee) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

### F.    Conclusion

For the reasons stated above, the Court should **GRANT IN PART** and **DENY IN PART** CCS Defendants Gray, Norris, and Johnson's motion to dismiss (ECF No. 144) and **GRANT** Wayne County Defendant Jean's motion to dismiss (ECF No. 183).  If the Court agrees with the above recommendations, then the only remaining claims would be those against Johnson and Gray as described in Paragraph 34 (*see* Section II.E.2), in conjunction with Paragraphs 37 and 38 (*see* Section II.E.3), Paragraphs 74 and 75 (*see* Section II.E.4.b).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  January 9, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

27